# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 25, 2024

Lyle W. Cayce
Clerk

No. 22-60453

United States of America,

*Plaintiff—Appellee*,

*versus*

Timothy Griffin,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:22-CV-143

_____

Before Clement, Southwick, and Ho, *Circuit Judges*.

Per Curiam:[*]

Timothy Griffin, federal prisoner # 21348-043, pled guilty to possession with the intent to distribute methamphetamine. He was sentenced to 262 months of imprisonment and five years of supervised release. Griffin then filed a 28 U.S.C. § 2255 motion challenging his conviction and sentence based on ineffective assistance of counsel. The district court denied his motion. We conclude the district court should have

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.4.

conducted an evidentiary hearing on Griffin's ineffective-assistance-of-counsel claim. We grant a limited REMAND for the hearing.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2019, a federal grand jury indicted Griffin and four others on drug-trafficking charges. The charges were conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), and possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2.

The district court appointed Tom L. Stingley to represent Griffin. After an April 2019 detention hearing, Griffin retained T. Murry Whalen as his counsel and Stingley withdrew from the case. Whalen worked on Griffin's pretrial motions and hearings. In March 2020, Whalen filed a motion to withdraw based on "irreconcilable differences." The district court granted Whalen's motion and reappointed Stingley as Griffin's counsel.

Griffin pled guilty. The district court advised Griffin that any sentencing range previously provided to him was an estimate. The court further informed Griffin that the Sentencing Guidelines were merely advisory and that the court could impose a sentence greater than the Guidelines range, up to life imprisonment. Griffin indicated he understood and still desired to plead guilty. He later signed the plea agreement.

The presentence investigation report ("PSR") designated Griffin as a career offender, applied the applicable career-offender enhancement, and recommended an imprisonment range of 262 to 327 months. Following the plea agreement terms, the Government proposed Griffin's sentence fall in the lower 25 percent of the Guidelines range. Consistent with the PSR and the Government's recommendation, the district court sentenced Griffin to a 262-month imprisonment term.

No. 22-60453

This court dismissed Griffin's appeal of the career-offender enhancement. *United States v. Griffin*, 839 F. App'x 939, 939–40 (5th Cir. 2021). Griffin then filed his *pro se* Section 2255 motion in district court, alleging Stingley and Whalen provided him ineffective assistance of counsel ("IAC"). First, Griffin contended his guilty plea was invalid because Whalen erroneously advised him that he would receive a life sentence if he proceeded to trial but faced a 78-month imprisonment sentence if he pled guilty. Second, Griffin asserted that Stingley, when reappointed, improperly told him that his charge mandated a 10-year minimum sentence, calculated his Guidelines range as 120 to 135 months, and failed to account for the career-offender enhancement. Third, and finally, Griffin argued Stingley should have sought a minor-role adjustment or variance at the sentencing hearing.

Included with Griffin's Section 2255 motion was his declaration made under penalty of perjury in support of his IAC claims. According to Griffin, after Stingley told him the Government had tendered a plea offer, Griffin informed Stingley that he preferred to go to trial. Griffin later retained Whalen as his counsel because he believed Stingley was only interested in securing a guilty plea. Whalen allegedly advised Griffin that the Government had offered him a 78-month plea deal. Anxious to proceed to trial, Griffin rejected the offer. Whalen cautioned Griffin that, based on his drug-trafficking charges, he would "definitely get a life sentence" if he lost at trial. After hearing this advice, Griffin changed his mind and accepted what he believed was a 78-month plea deal. Once Whalen received confirmation Griffin would plead guilty, she moved to withdraw as counsel.

According to Griffin, Stingley noted the lack of a definite 78-month term of imprisonment in the plea agreement upon his reappointment. Stingley advised Griffin to contact Whalen with any questions regarding that issue. Griffin asserted that Stingley informed him, based on the plea

3

agreement, that the Government would recommend his sentence fall in the lower 25 percent of the Guidelines range, which the Government calculated at 108 to 135 months. Accounting for the quantity of drugs involved in his charges and the 10-year mandatory minimum sentence, Stingley told Griffin that his Guidelines range would be 120 to 135 months, which would likely result in the Government requesting a 120-month sentence. Griffin did not want to accept the plea deal when he realized that he faced a 10-year mandatory minimum sentence but was still concerned about receiving a life sentence if he lost at trial. Griffin questioned Stingley about Whalen's advice regarding the life sentence. Stingley responded that he had not researched the issue because he was not appointed for sentencing matters but saw no reason to doubt Whalen.

Griffin further alleged neither Whalen nor Stingley advised him that he would be subject to the career-offender enhancement at sentencing. His IAC claim thus rested on counsel overestimating his sentence if he went to trial and underestimating his sentence if he pled guilty. Consequently, he argued he could not make an informed decision about whether to plead guilty.

The district court requested that Whalen and Stingley file responsive affidavits. In her affidavit, Whalen did not expressly contradict Griffin's assertion that she advised him he *would* face a mandatory life sentence at trial, but she acknowledged explaining he *could* face life in prison based on his violent criminal history. She further stated that the Government's plea offer did not stipulate a 78-month sentence.

In Stingley's affidavit, he explained that when he was first appointed to represent Griffin, he did not try to persuade Griffin to plead guilty or request he do so. Stingley stated it had been too early in the defense process to take a position on a plea. Griffin subsequently told Stingley he was retaining Whalen because she had successfully represented him in past

matters. Stingley also disputed Griffin's assertion that he did not discuss the career-offender provisions with Griffin when reappointed. He alleged discussing the potential for enhancements from the beginning of his representation, including the possible enhancements arising from his criminal history. Stingley did not contradict Griffin's contention that Stingley predicted the Guidelines range would likely fall between 120 to 135 months of imprisonment.

After considering Griffin's IAC claim and the responsive affidavits, the district court denied his Section 2255 motion without an evidentiary hearing. The district court also denied Griffin a certificate of appealability ("COA"). This court granted him a COA on the issue of whether his "guilty plea was the result of erroneous advice given by both his retained counsel and his subsequent appointed counsel regarding his sentencing exposure." Griffin proceeds *pro se* in this appeal.

## DISCUSSION

Griffin argues on appeal that the district court erred in denying his Section 2255 motion without affording him an evidentiary hearing. Specifically, he asserts the contradicting evidence and affidavits create a factual dispute regarding the performance of his counsel. According to Griffin, an evidentiary hearing would clearly demonstrate the sufficiency of his IAC claim.

A Section 2255 motion "can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). In determining what the motions, files, and records show, this court may consider the defendant's affidavit as to what his counsel advised him. *United States v. Reed*, 719 F.3d 369, 374 (5th Cir. 2013).

Here, Griffin's declaration describes exactly what, according to him, counsel advised him in advance of his plea and sentencing. The district court called for responsive affidavits from Stingley and Whalen. On some issues, the affidavits do not dispute Griffin's declaration, *i.e.*, that Stingley advised Griffin his Guidelines range would be 120 to 135 months of imprisonment if he pled guilty. On other issues, Griffin and counsel dispute the precise advice Griffin received. According to Griffin's declaration, for instance, Whalen advised him that, based on his drug-trafficking charges, he would "definitely get a life sentence" if he lost at trial. Whalen's affidavit, however, indicates she advised Griffin that, should he proceed to trial, he *could* face life in prison — not that he *would*. At minimum, some factual disputes remain about Stingley's and Whalen's advice before Griffin's plea hearing and sentencing.

There is no doubt the advice counsel gave Griffin regarding the possible sentences he might receive resulting from a trial versus a plea agreement and the relative likelihood of any such sentence is relevant to Griffin's IAC claim. Plea negotiations are a critical phase of litigation. "When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice." *Reed*, 719 F.3d at 373 (citation omitted). A Section 2255 movant asserting an IAC claim must demonstrate (1) that his "counsel's performance was deficient" and (2) "the deficient performance prejudiced [his] defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either [requirement] defeats the ineffectiveness claim." *Id.* at 700.

Griffin argues the following conduct from Stingley and Whalen qualifies as deficient performance that made his decision on whether to plead guilty uninformed. According to Griffin, Whalen incorrectly advised "that he would 'definitely get a life sentence' because of a mandatory minimum if he went to trial." Then, Stingley did not correct Whalen's inaccurate

mandatory life-sentence estimate and "incorrectly told Griffin that by accepting the plea[,] his sentence exposure would range between 108 to 135 months, with a 120-month mandatory minimum." Ultimately, however, Griffin's sentence was 262 months — more than double Stingley's prediction.

This discrepancy can be explained, at least in part, by the fact that neither counsel allegedly contemplated a career-offender enhancement — another possible basis for Griffin's IAC claim. *See United States v. Hayes*, 532 F.3d 349, 353–55 (5th Cir. 2008); *United States v. Scribner*, 832 F.3d 252, 258 (5th Cir. 2016). Although Stingley avers that he discussed the possibility of enhancements resulting from Griffin's criminal history, his ultimate prediction as to the applicable sentence range appears to have omitted any such enhancement. The record suggests the PSR was the first time Griffin became fully notified of the applicability of a career-offender enhancement and its implications for his ultimate sentence.

The district court discussed how, on multiple occasions following the alleged deficient performance, Griffin either received an explanation of the possible penalties or acknowledged he understood them. Further, at his plea hearing, Griffin testified under oath that he fully comprehended the terms of his agreement and the range of penalties the district court described. While it is true that Griffin understood he *could* get up to life in prison from pleading guilty, he trusted his counsel's advice that a 120-month sentence was the likely outcome. He weighed that option against the prospect of an allegedly certain life sentence should he lose at trial, another prediction from counsel.

Taking Griffin's allegations as true, counsel's advice arguably tainted the desirability of his plea agreement, and Griffin's IAC claim potentially has merit. Because Griffin's declaration and Stingley's and Whalen's affidavits fail to "conclusively show that [Griffin] is entitled to no relief," the district

court abused its discretion in denying his motion without an evidentiary hearing. *Bartholomew*, 974 F.2d at 41.

We grant a limited REMAND for an evidentiary hearing to determine the advice counsel gave Griffin concerning the possible sentences that might result from a trial versus a plea agreement and the relative likelihood of each such outcome. The district court should make findings on the evidence, and the case will then return to this panel.

We retain jurisdiction of the appeal.